UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDREW DENAPOLI,

    Petitioner,

v.                                            Case No. 8:04-cv-2340-T-23TBM

DON MERRITT, Warden,

    Respondent.
_____/

## **O R D E R**

Denapoli petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges his conviction and sentence for second degree murder, for which he is serving twenty (20) years. Numerous exhibits ("Respondent's Exhibit __") support the response (Doc. 7).[1] The respondent admits the petition's timeliness (Response at 11 n.2 Doc. 7).

## **FACTS**[2]

Michael Bryant and Barry Johnson had regularly purchased drugs from Denapoli over the four years since their high school days together. In their final drug deal, Bryant

---

[1] The state court record contains eighty-six numbered exhibits and requires more shelf space than a storage box. The court reporter required more than two years to compose the trial transcripts and intermittently filed portions of the record. Consequently, the trial transcript (Respondent's Exhibit 1) is comprised of and labeled as follows: Transcript (one volume), Supplemental (three volumes), 2nd Supplemental (three volumes), 3rd Supplemental (three volumes), 4th Supplemental (four volumes), 6th Supplemental (one volume), 7th Supplemental (one volume), and 8th Supplemental (one volume). No volume is labeled 5th Supplemental.

[2] This summary of the facts derives from the briefs on direct appeal, Denapoli's petition, and the response, as well as a review of the trial transcripts.

and Johnson each paid Denapoli about nine thousand dollars for several pounds of marijuana. Bryant and Johnson met Denapoli on a street corner, Denapoli entered the back seat of Bryant's car, and the three men waited for Denapoli's courier to deliver the drugs. Bryant and Johnson expressed concern about the lengthy delay for delivery. Bryant heard a gunshot, which caused him to speed away because he believed the gunshot had occurred outside of the car. He then realized that Denapoli had shot Johnson in the back of the head. Bryant gained possession of the gun from Denapoli and tried to shoot Denapoli but the gun jammed. Denapoli then escaped through the rear door.

## **STANDARD OF REVIEW**

Because this action commenced after April 24, 1996, Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one."  <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002); <u>Brown v. Head</u>, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness <u>per se</u>, of the state court decision that we are to decide.").

The state appellate court affirmed (Respondent's Exhibit 63) Denapoli's conviction and sentence on direct appeal in a <u>per curiam</u> decision without a written opinion, and likewise affirmed (Respondent's Exhibit 74) the denial of his subsequent Rule 3.850 motion for post-conviction relief.  The state appellate court's <u>per curiam</u> affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due."  <u>Wright v.</u>

Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom. Wright v. Crosby, 538 U.S. 906 (2003).

Denapoli bears the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to a finding of fact, not a mixed determination of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001). Consequently, this court must defer to the finding of fact in the trial court's rejection of Denapoli's post-conviction claims (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 71 Vol. II at 39-45). However, because the state appellate court affirmed Denapoli's conviction and sentence without a written opinion, no finding of fact exists to which this court can defer regarding Denapoli's third ground for relief.

## **DIRECT APPEAL CLAIM**

Ground Three:

Denapoli argues in ground three that the police violated his Miranda[3] rights.[4] The detectives questioned Bryant further at the police station because they doubted Bryant's initial explanation of the crime while at the hospital. Denapoli called the police to report the shooting and went to the police station. The detectives conducted simultaneous

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

[4] This issue was raised on direct appeal in the initial brief filed pursuant to Anders v. California, 386 U.S. 738 (1967), the supplemental Anders brief, and the second supplemental Anders brief (Respondent's Exhibits 12, 30, and 60).

- 4 -

interviews of both Denapoli and Bryant without either knowing that the other was present. The facts disclosed earlier in this order represent Bryant's version of the shooting. To the contrary, Denapoli claimed that he purchased cocaine from Bryant and Johnson, that Denapoli paid Johnson inside the car, and that Bryant and Johnson commenced arguing over the money, ending with Bryant shooting Johnson. Denapoli claimed that he struggled for the gun after Bryant threatened him and that he escaped through the rear door. The detectives conferred for about thirty minutes after the initial interviews, and because of the inconsistencies between the two versions, both Denapoli and Bryant were interviewed again. Both Denapoli and Bryant were released.

After several days of investigation, the detectives focused on Denapoli as the shooter. Detective Celona summarized the results of the investigation as follows (Respondent's Exhibit 1 Vol IV of 4th Supplemental at 663-64):

> Based on the evidence inside the vehicle as far as the blood, the gunshot wound to Barry Johnson's head, the direction of the gunshot and where it would have come from, everything indicated the shot had to be fired from the back seat. Examination of the firearm shows that the gun would have had to have been fired before that malfunction could occur, which was consistent with Michael Bryant's statement and very inconsistent with Andrew Denapoli's statement. Also, the statement that the gun did not belong to him and then we were able to trace the gun back and show that the gun, in fact, was Andrew's and he was the one that did bring the gun that night. Also, the consistent statement as to the type of narcotics transaction that was supposed to occur that night. Based on the interviews with Bryant and LaTonya Jones, everything was very consistent with what Michael Bryant was telling us and not consistent at all with what Andrew Denapoli was telling us.

When advised of his Miranda rights during one of the interviews, Denapoli responded, "Do I need a lawyer?" The detective advised Denapoli that "I can't make that decision, that would be something [Denapoli] would have to decide whether he

- 5 -

needed an attorney" (Respondent's Exhibit 1 Vol IV of 4th Supplemental at 597).  At the conclusion of the Miranda warning, Denapoli acknowledged understanding his rights and agreed to the questioning.

Denapoli argues that his inquiry precluded further questioning without the presence of counsel.  Denapoli's inquiry was not an unequivocal assertion of his Miranda rights.  Davis v. United States, 512 U.S. 452, 459 (1994) ("[T]he suspect must unambiguously request counsel . . . he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.").  Consequently, continued questioning was permitted.  Davis v. United States, 512 U.S. 461-62 ("If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him.").  Denapoli unconvincingly argues that the state court ignored the following teachings of Moran v. Burbine, 475 U.S. 412, 421 (1986):

> Miranda holds that "the defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently."  384 U.S., at 444, 475, 86 S.Ct., at 1612, 1628.  The inquiry has two distinct dimensions.  Edwards v. Arizona, supra, 451 U.S., at 482, 101 S.Ct., at 1883; Brewer v. Williams, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977).  First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Denapoli's situation is identical to Moran's: "the record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit the statements . . . ."

Moran v. Burbine, 475 U.S. at 421.  Consequently, Denapoli's reliance on Hart v. Attorney General of Florida, 323 F.3d 884 (11th Cir. 2003), is misplaced.  The state court's rejection of Denapoli's Miranda claim was neither contrary to or an unreasonable application of controlling Supreme Court precedent nor an unreasonable determination of the facts.

### **INEFFECTIVE ASSISTANCE OF COUNSEL**

Denapoli asserts two claims of ineffective assistance of counsel, a difficult claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).  Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to Strickland, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice. Strickland v. Washington, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims v. Singletary, 155 F.3d at

1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland v. Washington, 466 U.S. at 690. Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Denapoli must demonstrate that error by counsel prejudiced the defense. Strickland v. Washington, 466 U.S. at 691-92. Consequently, Denapoli must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland v. Washington, 466 U.S. at 690-91. Denapoli cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992). Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)). See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

Denapoli must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The state court conducted an evidentiary hearing and, in the order denying relief, applied Strickland's two-prong test (Respondent's Exhibit 71 Vol II at 39-40).

> To raise a successful ineffective assistance of counsel claim, the defendant must show two elements. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defendant. This requires that the defendant show that the outcome at trial would likely be different. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Further, the defendant must satisfy both prongs of the test in order to prevail and, as such, if the defendant fails to establish one

- 9 -

>prong, the other prong need not be considered.  See Johnson v. State, 593 So.2d 206 (Fla. 1992).

Because the state court correctly recognized that Strickland governs Denapoli's ineffective assistance of counsel claims, Denapoli cannot meet the "contrary to" test in Section 2254(d)(1).  Denapoli instead must show that the state court unreasonably applied Strickland or unreasonably determined the facts.

Ground One:

This ground contains three claims that trial counsel rendered ineffective assistance.  First, Denapoli faults counsel for having Denapoli testify before the grand jury and not allowing Denapoli to testify at trial.  The state court rejected this claim as follows:

>Defendant contends that counsel was ineffective in advising him that his testimony before the grand jury could not be introduced at trial.  He further contends that this misadvice induced him later to decide not to testify at trial.  Defendant states that if he had testified at trial, there is a reasonable probability of a different outcome.
>
>Even if counsel was ineffective in misadvising Defendant, Defendant has failed to demonstrate how he was prejudiced.  Defendant states that the above misadvice affected his decision in deciding not to testify; however, Defendant could have still testified if he so desired.  Further, he states that he would have told the truth and that he would explain why he did not tell the truth in his initial police interview.  In the redacted version of his grand jury testimony, which was read to the jury, Defendant explains said reasons for failing to do such.  In light of the fact that he acknowledged that his prior statements were not truthful, even if he did testify, there is not a reasonable probability that his testimony would produce a different result at trial.

(Respondent's Exhibit 71 Vol II at 40) (court's record citations omitted).

Second, Denapoli faults counsel for not testing for powder residue the paper towels that cleaned Bryant's hands.  The state court rejected this claims as follows:

- 10 -

> Defendant contends that counsel was ineffective in failing to have soiled paper towels upon which Bryant wiped his hands after the shooting analyzed by a chemist for gun powder residue to support his defense that Bryant and not Defendant had committed the crime.
>
> Defendant's claim is facially insufficient. Defendant was represented by privately retained counsel. Defendant does not state whether he did or did not discuss with his attorney whether a chemist should be retained to conduct an independent test on the paper towels. Nor does he indicate that he had the ability or offered to tender additional monies for this purpose. Defendant's attorney had no obligation to hire such an expert without first confirming that the client was able to provide funds for the testing.
>
> Further, Defendant speculates that if the paper towels were tested that the results would indicate significant[ly] higher levels of gun powder residue proving that Michael Bryant was the shooter. The chemist testified that the finding of residue only confirms that someone was present when the firearm is fired, not who fired the weapon. Both Michael Bryant and Defendant admit that they were present when the firearm was discharged. The chemist also testified that the particles dissipate rapidly. The shooting occurred at approximately 10:30 p.m. and Defendant was tested upon being brought to the station at approximately 1:20 a.m., three hours after the shooting. Even if the tests demonstrated higher levels of residue on Michael Bryant, such a comparison between Defendant and the witness's residue would be rendered meaningless. Therefore, the prejudice prong of the <u>Strickland</u> test would not be met. This claim is denied.

(Respondent's Exhibit 71 Vol II at 41) (court's record citations omitted).

Third, Denapoli faults counsel for not objecting to the prosecutor's closing argument. The state court rejected this claims as follows:

> Defendant contends that counsel was ineffective in failing to object to the prosecutor's improper closing argument.
>
> Defendant misquotes the prosecutor and also misrepresented one of the prosecutor's statements. Counsel's first statement is reproduced below:
>
>> ". . . the Defense wants you to think — the State wants you to think — the State should be charging Michael Bryant with something. Well, not only would that be unethical. That would be taking the badge and throwing it in the garbage when we charge somebody who didn't do it."

- 11 -

Defendant's strategy at trial was to argue that the State's witness, Michael Bryant, was the shooter. In his closing argument, the prosecutor argued that the physical evidence and testimonial evidence supported Michael Bryant's version of events over Defendant's. With this statement, the prosecutor was only countering the Defense's inference that Michael Bryant was the shooter. Furthermore, on rebuttal, defense counsel addressed the prosecutor's statement arguing that the State overcharged Defendant with premeditated murder without having sufficient evidence to support the charge. It would appear that counsel's argument was successful since Defendant was found guilty of the lesser included [offense] of murder in the second degree.

The second statement is reproduced below:

> "What this guy does in the interim is he calls 911. Mom gets him to call 911 and this is what he does. He blames somebody else for a murder. That's pretty sick. Because even if you believe this guy — if you believe this guy — if you believe this guy with his later version that there was a fight over a gun, that [is] still sick."

During the first closing argument, counsel highlighted the inconsistencies in Michael Bryant's story. In response, the prosecutor is pointing out that in his 911 phone call, Defendant stated that Michael Bryant murdered the victim, whereas in his subsequent statement, he stated that the shooting was accidental when Michael Bryant and Defendant wrestled for the firearm.

As to the third statement, nowhere in his closing argument does the prosecutor refer to Defendant as "Charles Manson."

Even if the prosecutor's comments were improper, Defendant has failed to show how he was prejudiced under the <u>Strickland</u> standard. The Court instructed the jury that the closing arguments are not evidence and only the lawyer's opinion as to what the evidence presented demonstrates. Defendant has not provided any affidavits or allegations to demonstrate that the jury members did not adhere to the Court's instructions or that the comments raised above influenced the jury's decision. It is presumed that the jury followed the court's instructions. See <u>McGee v. State</u>, 304 So.2d 142 (Fla. 5th DCA 1974). Without such evidence, the claim is speculative, at best, and the Court will not hold an evidentiary hearing to conduct a fishing expedition. See <u>Arbeleaez v. State</u>, 775 So.2d 909 (Fla. 2000); <u>Davis v. State</u>, 736 So.2d 1156 (Fla. 1999). As Defendant has failed to show that there is a reasonable probability that but for counsel's failure to

> object to the comments, that the outcome would have been different, this
> claim is denied.

(Respondent's Exhibit 71 Vol II at 41-42) (court's record citations omitted).

The state court correctly rejected each of the three claims of ineffective assistance of trial counsel because Denapoli failed to meet the prejudice prong of Strickland. The trial court ensured that Denapoli knowingly and voluntarily waived his right to testify (Respondent's Exhibit 1 8th Supplemental at 317-19). This waiver occurred after the reading of Denapoli's grand jury testimony during trial. An expert testified that the amount of powder residue on Denapoli's hands as compared to Bryant's hands would not show which of the two pulled the trigger. Finally, Denapoli fails to show that the prosecutor's comments adversely affected the jury's verdict. Improper prosecutorial remarks will compel habeas corpus relief only if the remarks are so egregious that the proceedings are rendered fundamentally unfair. See Cargill v. Turpin, 120 F3d 1366 (11th Cir. 1997). See also Tucker v. Kemp, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair."), cert. denied, 480 U.S. 911 (1987).

Ground Two:

Denapoli alleges several claims of ineffective assistance of appellate counsel, each based on the adequacy of the appellate record on direct appeal. The court reporter's apparent mental and emotional problems delayed filing a complete record[5] on direct appeal; the state court issued several orders for the court reporter to complete

---

[5] See n.1.

the record, a process that required the assistance of another reporter. In his direct appeal briefs, Denapoli fully challenged both the completeness and the accuracy of the record on direct appeal. The specific issue asserted in ground two is that appellate counsel "failed to adequately argue the issue whether petitioner is entitled to a new trial because of the lack of trustworthiness of the transcript . . . ." Denapoli's claim is not that appellate counsel failed to raise the issue on direct appeal, but that counsel failed to adequately develop the issue. Denapoli asserted this claim in his petition for a writ of habeas corpus, which the state opposed and the district court of appeal summarily rejected (Respondent's Exhibits 65, 66, and 65, respectively). Denapoli's disagreement with the thoroughness of appellate counsel's brief fails to show that counsel was ineffective.

Moreover, a challenge to the adequacy of the state court record is meritless. After vigilantly ordering the court reporter to complete the record for direct review and allowing Denapoli's appellate counsel to file a supplemental brief, the state court implicitly determined that the record was sufficiently complete to allow an adequate review. The state court complied with Supreme Court precedent, which requires that "the State must afford the indigent a 'record of sufficient completeness' to permit proper consideration of his claims. A 'record of sufficient completeness' does not translate automatically into a complete verbatim transcript." Mayer v. City of Chicago, 404 U.S. 189, 194 (1971), quoting Draper v. Washington, 372 U.S. 487, 496 (1963). The state afforded Denapoli a sufficiently complete record for appellate review; Denapoli was not entirely denied a record for appellate review, which was the situation addressed in Draper, Mayer, and Griffin v. Illinois, 351 U.S. 12 (1956).

Denapoli's reliance on Hardy v. United States, 375 U.S. 277 (1964), and Kentucky v. Stincer, 482 U.S. 730 (1987), is misplaced.  Denapoli was not a defendant in a federal prosecution and he was not excluded from participating in a proceeding.

Denapoli fails to show that the state court's decision was an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts.

## **PROCEDURAL DEFAULT**

In ground four Denapoli presents several challenges to his sentence.  Denapoli presented these challenges in a state Rule 3.800(a) motion to correct illegal sentence (Respondent's Exhibit 76), but the state court summarily rejected the claims on procedural grounds (Respondent's Exhibit 77).  Before a claim is procedurally barred from federal review, a state court must reject reviewing the claim that was presented in a procedurally defective manner.

> Thus, the mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent this Court from reaching the federal claim: "The state court must actually have relied on the procedural bar as an independent basis for its disposition of the case."

Harris v. Reed, 489 U.S. 255, 262 (1989), quoting Caldwell v. Mississippi, 472 U.S. 320, 327 (1985).  Also, the court must state that it is enforcing the procedural rules.  "[I]f 'it fairly appears that the state court rested its decision primarily on federal law,' this Court may reach the federal question on review unless the state court's opinion contains a 'plain statement' that its decision rests upon adequate and independent state grounds." Harris v. Reed, 489 U.S. at 261, quoting Michigan v. Long, 463 U.S. 1032, 1042 (1983).

The state court's order (Respondent's Exhibit 77) contains a plain statement applying a procedural default rule and declining to consider the claims based on the default rule.

> Defendant alleges various double jeopardy and due process violations occurred during his sentencing and resentencing hearings. However, these claims are not properly raised in a Rule 3.800(a) motion. Carter v. State, 786 So.2d 1173 (Fla. 2001). The court finds that these claims should have been raised on direct appeal or in a sworn Rule 3.850 motion.

The state appellate court summarily affirmed (Respondent's Exhibit 81). Consequently, Denapoli procedurally defaulted ground four. See Harmon v. Barton, 894 F.2d 1268, 1273 (11th Cir. 1990) (A state appellate "court's per curiam affirmance of the trial court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal courts.").

Accordingly, Denapoli's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk shall enter a judgment against Denapoli and close this action.

ORDERED in Tampa, Florida, on April 16, 2008.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE